**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BARBARA D. JONES,
<u>Plaintiff-Appellant,</u>

v.

GREENVILLE HOSPITAL,

No. 97-2306

<u>Defendant-Appellee,</u>

and

DIANA BAKER,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Greenville.
Henry M. Herlong, Jr., District Judge.
(CA-96-2456-6-20)

Argued: September 24, 1998

Decided: November 30, 1998

Before WILKINSON, Chief Judge, and WILKINS and
NIEMEYER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Robert Calvin Wilson, Jr., Greenville, South Carolina, for
Appellant. Thomas Allen Bright, HAYNSWORTH, BALDWIN,
JOHNSON & GREAVES, L.L.C., Greenville, South Carolina, for
Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant challenges the dismissal of her claim for constructive discharge in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112. Because the record indicates that appellant's dissatisfactions involved nothing more than a run-of-the-mill personality conflict, a reasonable person in the position of appellant would not have felt compelled to quit. Accordingly, the appellant was not constructively discharged and we affirm the judgment of the district court.

I.

Barbara Jones was a teacher's assistant at the Center for Developmental Pediatrics (Center), which treats children with autism and other learning disabilities. The Greenville Hospital System (GHS) runs the Center and employed Jones from April 1989 through August 1996. Jones was diagnosed in her youth with partial hearing loss and compensated for her disability by wearing hearing aids and lip reading. Her supervisors at the Center were aware of her hearing impairment.

During Jones' employment she assisted several lead teachers. Even though the lead teacher often changed, Jones' duties remained largely the same. They included cleaning up the classroom, assisting children with bathroom duties, and preparing art lessons. Throughout her tenure she received evaluations of "meets" and "exceeds standards" in her employment reviews.

Jones alleges that her troubles at work began with the hiring of a new lead teacher, Diana Baker, in August 1993. Over the course of three years Baker and Jones clashed several times. The disputes between the two stemmed from a variety of job-related tasks. Baker

2

reprimanded Jones for not following directions and making bad decisions when purchasing items to be used as snacks or art supplies. For example, Baker reprimanded Jones for not buying the generic brand of cereal, for purchasing shaving cream when the Center already had the item, and for buying too much ground beef. Jones also objected to the tone Baker used in correcting her for mistakes such as leaving juice out of the refrigerator and serving a child expired milk. On each of these occasions Jones became upset even though she was never disciplined or formally reprimanded. Jones disliked the fact that Baker was a "perfectionist." At no time, however, did anyone ever make fun of Jones' disability.

Jones spoke with the manager of the Center, Janine Sally, about her problems with Baker. Sally began meeting weekly with Jones and Baker to discuss their interactions. Jones never complained that her disability was causing the communication problems between Baker and Jones. In September 1995, Jones met with Sally and personnel officer Joan Craig. At the meeting, Jones indicated she wanted to transfer. Thereafter, Sally and Craig helped Jones try to find another job within GHS. Jones ultimately changed her mind, deciding to continue in her job as teaching assistant.

In June 1996 Baker left her teaching job at the Center. During the search for a new teacher, Sally involved Jones in the interviewing of candidates. The Center then hired Heather Jones, with whom Jones was "very happy." According to Jones, the two worked "real well" together. Jones told Heather that if she "leaves, I was going to leave behind her." Heather soon tendered her resignation.

During the search for another teacher, Jones again was involved in the selection process. She interviewed the teacher ultimately hired to replace Heather. Jones admits she thought she would have a good working relationship with the new teacher, who was to begin work on August 26.

On Heather's last day in mid-August, Jones met with Sally. According to Jones, Sally stated she wanted "to run the center just like Diana Baker did." Jones testified that this comment resurrected "bad memories" of her relationship with Baker-- "the way [Baker] talked to me, the way she harassed me." A few days later, Jones ten-

3

dered her resignation, stating that Jones "felt like [Sally] needed a new aide with a new teacher." Jones' last day was August 23, 1996.

On February 24, 1996, Jones had filed charges of employment discrimination with the EEOC. She received a "Right to Sue" letter on June 3, 1996. She filed suit on August 20, 1996, in the United States District Court for the District of South Carolina. Jones alleged age discrimination and state law claims including breach of the covenant of good faith and fair dealing, breach of contract accompanied with a fraudulent act, and intentional infliction of emotional distress. She also claimed that GHS violated the ADA by constructively discharging her on the basis of her disability. The parties consented to the dismissal of the age discrimination and intentional infliction of emotional distress claims. After almost a year of discovery, GHS moved for summary judgment in June 1997. The district court granted the motion and dismissed the action. Jones appeals only the dismissal of her ADA claim.

II.

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees." 42 U.S.C. § 12112. To make out a cause of action for discriminatory discharge, a plaintiff must show that (1) she has a disability; (2) she is otherwise qualified for the employment in question; (3) she was excluded from that employment due to discrimination solely on the basis of the disability. See Williams v. Channel Master Satellite Sys., Inc., 101 F.3d 346, 348 (4th Cir. 1996); Doe v. University of Maryland Medical Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995).

Jones claims that she was constructively discharged."A plaintiff alleging constructive discharge must . . . prove two elements: deliberateness of the employer's action, and intolerability of the working conditions." Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985); see also Johnson v. Shalala, 991 F.2d 126, 131 (4th Cir. 1993). Intolerability requires that a reasonable person in the plaintiff's position would have felt compelled to resign. See Bristow, 770 F.2d at 1255.

4

Jones contends that a reasonable person in her position would have felt forced to quit. She alleges that working with Baker caused her to lose twenty-seven pounds and suffer stress-related injuries. Jones asserts that when she learned from Sally that similar methods of teaching would continue to be used, resignation was the only reasonable course of action. We disagree. A reasonable person would not have found the situation in this case intolerable.

As an initial matter, the incidents cited by Jones are simply not the extreme examples of employer abuse required to establish a claim for constructive discharge. Jones argues that Baker instituted a new set of classroom protocols and that these protocols failed to reasonably accommodate Jones' hearing disability, but the record is completely devoid of evidence supporting this assertion. Instead, the record reveals that Jones was simply upset by Baker's strict-taskmaster style of administration. Jones admitted that she did not like it that Baker taught "by the book," and Jones felt the program should be run differently. The undisputed evidence indicates that the heart of the problem was a personality conflict. This clash manifested itself in a series of incidents where Baker reprimanded Jones for not following directions and for making mistakes such as leaving juice unrefrigerated. These events upset Jones, but they do not rise to the level required for constructive discharge. See Bristow, 770 F.2d at 1255 ("Every job has its frustrations, challenges and disappointments; these inhere in the nature of work. . . . [An employee] is not . .. guaranteed a working environment free of stress."). At best, they amount to minor, commonplace annoyances.

Every indication in the record suggests that even these annoyances had subsided by the time Jones actually quit. The record reveals that Jones' problems stemmed from her relationship with Baker. Baker, however, left her job at the Center two months before Jones quit. At the time of her resignation, Jones had established a good working relationship with Heather Jones, the teacher who replaced Baker. Moreover, Jones admits that she thought she would get along well with Heather Jones' incoming replacement. Under these circumstances, a reasonable person would not have concluded that the working conditions were intolerable. Thus, the timing of the resignation also defeats Jones' claim for constructive discharge.

5

III.

Because we find that there was no constructive discharge in this case, we need not pass on the other elements of an ADA claim for discriminatory discharge. The judgment of the district court is hereby

AFFIRMED.